SEAN P. NALTY, CA Bar No. 121253
sean.nalty@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

BENJAMIN W. PERRY, *pro hac vice* (application pending)
benjamin.perry@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
401 Commerce Street, Suite 1200
Nashville, TN 37219
Telephone: 615-254-1900
Facsimile: 615-254-1908

Attorneys for Defendant
Cybernet Entertainment, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

S.H. and C.C. on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Cybernet Entertainment, LLC d/b/a Kink.com

Defendant.

Case No. 3:25-cv-04682-VC

**DEFENDANT'S MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Complaint Filed: June 3, 2025
Hearing Date: September 11, 2025
Hearing Time: 10:00 AM
Courtroom: 4
Judge: Hon. Vince Chhabria

Trial Date: None set

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on **September 11, 2025,** at **10:00 AM,** or as soon thereafter as this matter may be heard before the Honorable Vince G. Chhabria, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Cybernet Entertainment, LLC will and hereby does move this Court for an order dismissing Plaintiffs' Complaint in its entirety.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Defendant Cybernet Entertainment, LLC asks this Court to dismiss Plaintiffs' Complaint with prejudice because Plaintiffs lack standing and failed to adequately plead a claim for relief. Dismissal is appropriate for the following reasons:

1. Plaintiffs consented to Cybernet's clear and conspicuous notice of the use of tracking technologies and sharing of data with third parties for advertising and analytics purposes.

2. Plaintiffs lack standing to pursue their claims, as they fail to allege any concrete or particularized injury resulting from Cybernet's conduct or even any plausible allegation that Plaintiffs' information was actually shared with third parties. To the extent the Complaint identifies specific identifiable personal information that Cybernet actually collected or disclosed, the harms alleged in Plaintiffs' Complaint are generalized, speculative, and insufficient to confer standing.

3. Plaintiffs' remaining allegations fail to state a claim upon which relief can be granted because Plaintiffs fail to allege the necessary elements of each claim.

DATED: July 30, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Sean P. Nalty*
Sean P. Nalty
Benjamin W. Perry (*pro hac vice* pending)

Attorneys for Defendant
Cybernet Entertainment, LLC

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES ........ 9

I. FACTUAL BACKGROUND ........ 9

II. LEGAL STANDARD ........ 10

III. ARGUMENT ........ 11

A. Plaintiffs consented to the alleged collection and disclosure of their data, which defeats all of their claims. ........ 11

1. Plaintiffs consented to the Terms of Use and Privacy Policy. ........ 11

2. The Privacy Policy and Terms of Use provide notice of Defendant's data collection and sharing practices. ........ 12

B. Plaintiffs lack Article III standing. ........ 14

C. Plaintiffs' remaining allegations fail to state a claim. ........ 16

1. Invasion of privacy (Count I). ........ 16

2. Breach of implied contract and unjust enrichment (Counts III & IV). ........ 17

3. Video Privacy Protection Act (Count V). ........ 18

4. Electronic Communications Privacy Act (Count VI). ........ 19

5. N.Y. Gen. Bus. Law § 349 (Count VII). ........ 20

6. California Unfair Competition Law (Count IX). ........ 21

7. Negligence (Count II) ........ 22

IV. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 10

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ... 11

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) ... 22

*Calhoun v. Google, LLC*, 645 F. Supp. 3d 916 (N.D. Cal. 2022) ... 11

*Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285 (E.D. Cal. 2024) ... 12

*Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025) ... 11

*City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616 (N.Y. 2009) ... 21

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 20

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ... 22

*Doe I v. Google, Inc.*, 741 F.Supp.3d 828 (N.D. Cal. 2024) (Chhabria, J.) ... 21

*Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839 (N.D. Cal. 2024) ... 12

*Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682 (2010) ... 17

*Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (9th Cir. 2018) ... 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) ........ 14

*Gadomski v. Patelco Credit Union*,
No. 2:17-CV-00695-TLN-AC, 2022 WL 223878 (E.D. Cal. Jan. 25, 2022) ........ 15

*In re GEICO Customer Data Breach Litig.*,
No. 21-CV-2210, 2023 WL 4778646 (E.D.N.Y. July 21, 2023) ........ 16

*In re Google, Inc. Privacy Policy Litig.*,
No. C-12-01382, 2013 WL 6248499 (N.D. Cal. 2013) ........ 20

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ........ 15

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 12, 22

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ........ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 11, 16

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 21

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 12

*King v. Hard Rock Café Int'l (USA), Inc.*,
No. 2:24-cv-01119, 2025 WL 1635419 (June 9, 2025) ........ 19

*Lakes v. Ubisoft, Inc.*,
No. 24-CV-06943-TLT, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ........ 11

*Lightoller v. Jetblue Airways Corp.*,
No. 23-cv-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... 19

*Mikulsky v. Noom, Inc.*,
682 F.Supp.3d 855 (S.D. Cal. 2023) ..... 14, 15

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ..... 18

*N. Star Int'l v. Ariz. Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983) ..... 10

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ..... 17

*Papasan v. Dometic Corp.*,
No. 16-CV-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) ..... 15

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) ..... 22

*Randall v. Univ. of the Pac.*,
No. 5:20-cv-03196, 2022 WL 1720085 (N.D. Cal. May 28, 2022) ..... 17

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-cv-08735, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ..... 14

*Sanchez v. Los Angeles Dept. of Transportation*,
39 F.4th 548 (9th Cir. 2022) ..... 17

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (Cal. Ct. App. 2021) ..... 12

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ..... 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ..... 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 14

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ..... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 14, 16

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017) ........ 21

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 16

*Yuille v. Uphold HQ Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023) ........ 20, 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 19

**Statutes**

18 U.S.C. § 2510 ........ 19

18 U.S.C. § 2511. ........ *passim*

18 U.S.C. § 2710 ........ 10, 18

Cal. Civ. Code § 3515 ........ 11

Cal. Bus. & Prof. Code, § 17200, *et seq.* ........ 10, 22

N.Y. Gen. Bus. Law § 349 ........ 10, 20, 21

Cal. Pen. Code § 630, *et seq.* ........ 10

**Other Authorities**

California Constitution ........ 16

Federal Rule of Civil Procedure 12(b)(6) ........ 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

This lawsuit closely mirrors hundreds, if not thousands, of recent complaints raising nearly identical allegations and reflects a growing pattern of litigation involving standard pixel-tracking claims. At bottom, the Complaint largely consists of generalized assertions about data collection practices of large technology companies. Beyond broadly describing common industry practices and alleged data-sharing mechanisms, the Complaint's only factual allegations specific to Plaintiffs—identified only by their initials "S.H." and "C.C."—is that they visited Defendant Cybernet Entertainment, LLC's website and registered for accounts. Plaintiffs provide no concrete allegations demonstrating that Cybernet improperly collected, disclosed, or misused any data specific to them.

Plaintiffs' claims are fatally defective for three independent reasons: **first**, Plaintiffs received notice of, and consented to, the challenged practices during the account registration process; **second**, Plaintiffs lack standing to pursue their claims as they do not allege any facts about what data they believe was collected from *them*; and **third**, Plaintiff's claims fail individually, each for distinct and separate reasons.

## I. FACTUAL BACKGROUND

Cybernet's business includes selling access to pornographic videos hosted on its website, www.kink.com. Plaintiffs registered for and used accounts on Kink.com in order to access these services. Compl. ¶¶ 17, 22. Users have two options for creating an account: either manually enter an email and password **or sign-in with an existing Google account**.[1] *See* Request for Judicial Notice ("RJN"); Perry Decl., Ex. 1, at 1.[2] Conspicuously above the "create account" button, Cybernet's website provides links to the documents governing the use of its service: "By signing up, you agree to our Terms of [Use] and Privacy Policy." *Id*.

---

[1] Plaintiffs do not allege which option they chose to create an account. *See* Compl. ¶¶ 17, 22. If Plaintiffs created an account using their Google account, they cannot now feign surprise that information about their activities on the website was shared with Google. Either way, the integration of Google into the account creation process provides some initial notice of Google's integration into the website's design and operation, which is also expressly disclosed in the Privacy Policy.

[2] Cybernet has concurrently filed a request for judicial notice and incorporation by reference.

Plaintiffs allege that Cybernet's website collects and transmits certain information related to individuals' use of the website, including the videos that they watch (the "Sensitive Information"), to Google and other third-party advertisers by installing Google Analytics, Google AdSense, and Google Tag Manager (the "Business Tools") on its website. Compl. ¶¶ 6-8. According to Plaintiffs, these Business Tools require website operators to install "Tracking Tools" such as pixels and third-party cookies that "capture sensitive, personally identifiable information provided to the website operator by its website users." Compl. ¶ 9. Plaintiffs claim Cybernet does this to deploy targeted advertisements, analyze its customer base, and identify new markets. Compl. ¶ 8. As to Plaintiffs' interactions with Cybernet, Plaintiffs allege only that they each registered for an account on Cybernet's website and used the website on multiple occasions in 2024 and 2025 to view pornographic media from their personal electronic devices. Compl. ¶¶ 17, 22. Plaintiffs also allege that, on every occasion they visited the website, they accessed the website while logged into their Google account on the same device, which would have enabled Google to link their website activity to their Google identities. Compl. ¶¶ 20, 25, 62.

Plaintiffs assert nine claims against Cybernet: (1) invasion of privacy, (2) negligence, (3) breach of implied contract, (4) unjust enrichment, (5) violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA"), (6) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.* ("ECPA"), (7) violation of N.Y. Gen. Bus. Law § 349, (8) violation of the California Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.* ("CIPA"), and (9) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200, *et seq.* ("UCL").

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III. ARGUMENT

### A. Plaintiffs consented to the alleged collection and disclosure of their data, which defeats all of their claims.

#### 1. Plaintiffs consented to the Terms of Use and Privacy Policy.

Plaintiffs' assertion that Cybernet collected and shared their data without consent is contradicted by the law and the facts. *See, e.g.,* Compl. ¶ ¶ 12, 73, 75.

"A person who consents to an act is not wronged by it." Cal. Civ. Code § 3515. As a result, courts regularly reject similar claims where the plaintiff's actions demonstrate consent under applicable law. *See, e.g.*, *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (plaintiff "must not have manifested by his or her conduct a voluntary consent" to alleged privacy violation); *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (consent as a defense to an invasion of privacy claim); *Lakes v. Ubisoft, Inc.*, No. 24-CV-06943-TLT, 2025 WL 1036639, at *8 (N.D. Cal. Apr. 2, 2025) (dismissing claims for invasion of privacy, CIPA, and VPPA on basis of consent); *Calhoun v. Google, LLC*, 645 F. Supp. 3d 916, 928 (N.D. Cal. 2022) (consent a defense to contract, implied covenant, and UCL claims); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196, 2021 WL 3191752, at *4-5 (N.D. Cal. July 28, 2021) (consent via privacy disclosures defeated CIPA claims); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (affirming dismissal of unjust enrichment claim based on consent); 18 U.S.C. § 2511(2)(d) (permitting interception of communication where one party consents).

"Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Stripe Inc.*, 2021 WL 3191752, at *2. Consent to a website's data practices may be established when (1) the website provides reasonably conspicuous notice of the terms and conditions, and (2) the user takes an action that unambiguously manifests assent. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). In assessing whether notice is reasonably conspicuous to a reasonably prudent Internet user, courts consider factors such as the placement of the notice, font size, style, and overall design. *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025). Contrasting design elements to distinguish the hyperlink and placement of the hyperlinks

near the "action button" further support a user's acceptance of, and enforcement of, hyperlinked terms of service. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024); *see also Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1299 (E.D. Cal. 2024) (holding that the plaintiff unambiguously manifested assent where the language "[b]y placing an order, you agree to our Terms of Use & Privacy Policy" appeared just below the checkout button, was underlined, and presented in a different color text).

Plaintiffs allege they registered for accounts on Kink.com and used those accounts to view content. Compl. ¶¶ 17, 22. During registration, Plaintiffs were expressly notified that "By signing up, you agree to our Terms of [Use] and Privacy Policy." Perry Decl., Ex. 1, at 1. And if Plaintiffs registered for an account through Google using the embedded Google login, they would have been presented with Cybernet's Terms of Use and Privacy Policy in a prominent manner on at least three separate occasions throughout the account creation process. Perry Decl., Ex. 2, at 1-2, 4. The Terms of Use and Privacy Policy were hyperlinked, accessible, and appeared in a red font that contrasted against the black background as well as the white font used for non-hyperlinked text. Perry Decl., Ex. 1, at 1.

Plaintiffs' creation of an account under these circumstances unambiguously manifested assent to the Terms, including the Privacy Policy. "[A] manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (Cal. Ct. App. 2021); *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 845 (N.D. Cal. 2024) (clicking "Create Your Account" after receiving notice that account creation constitutes acceptance of the terms establishes consent). Plaintiffs would have received conspicuous notice and took affirmative action, manifesting assent to the Website's Terms of Use and Privacy Policy by clicking "create your account." *See* Perry Decl. Ex. 1-2.

**2. <u>The Privacy Policy and Terms of Use provide notice of Defendant's data collection and sharing practices.</u>**

Cybernet's Privacy Policy unambiguously discloses the use of advertising and analytics tools, such as the complained-of Business Tools. *See* Perry Decl., Ex. 4, at 4, 6. It states: Cybernet "use[s]

third-party advertising services . . . to deliver advertising about other websites you may be interested in" and that "[t]hese third-party services may place cookies or other tracking technologies on your computer, phone, or other device and may access those tracking technologies in order to serve these tailored advertisements to you." Perry Decl., Ex. 4, at 4-5. The Policy further details the mechanisms by which data is collected, stating: "We use browser cookies and similar information-gathering technologies such as web beacons on our website." Perry Decl., Ex. 4, at 4. It goes on to explain that Cybernet "and service providers acting on [Cybernet's] behalf (like Google Analytics, third party advertisers and third party IT service providers) use server log files and automated data collection tools like cookies, tags, scripts, customized links, device or browser fingerprints, and web beacons (together, 'Data Collection Tools') when [users] access and use the website." *Id.* This language is not abstract or ambiguous; it enumerates the specific technologies employed and the categories of third parties involved, providing users with a meaningful understanding of how and by whom their data may be collected and how it will be used.

The Privacy Policy is equally explicit regarding the sharing of user data with advertising partners. It states: "We share information with advertising partners in order to send you promotional communications about our Website or to show you more tailored content, including relevant advertising for third-party products and services that may be of interest to you, and to understand how users interact with advertisements." Perry Decl., Ex. 4, at 7. The Policy further clarifies: "We also share personally identifiable information with third-party advertisers to enable them to provide you with opportunities to learn of products or services in which you may be interested." *Id*. These statements unambiguously inform users that their data—including personally identifiable information—may be shared with third-party advertisers for the purpose of delivering targeted advertising and related communications.

Taken together, these disclosures satisfy the legal standard for informed consent. Cybernet's Terms of Use make explicit that "use of Cybernet's services … constitutes [user's] acceptance of these Terms of Use," and "[b]y using Cybernet's services, [users] are consenting to our use of [their] information according to the privacy policy in place at the time [users] use the website." Perry Decl.,

Ex. 3, at 1, 4. Cybernet's detailed explanations of the use of tracking technologies, the involvement of named third-party analytics and advertising services, and the explicit statements regarding the sharing of both personally identifiable data provide users with the information necessary to make an informed choice about whether or not to use Cybernet's services.

By presenting these disclosures at the point of account creation and requiring affirmative agreement, Cybernet obtained users' informed consent to the use of tracking tools and the sharing of data with third parties for analytics and advertising. As such, these disclosures are legally sufficient to defeat any claim that Plaintiffs were unaware of, or did not consent to, the challenged practices.

### B. Plaintiffs lack Article III standing.

Plaintiffs lack Article III standing because they have failed to allege any concrete, particularized injury resulting from Cybernet's conduct and instead rely on speculative, generalized harms that do not satisfy the constitutional threshold for standing.

Article III standing requires a plaintiff to show an injury in fact, traceability, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000). As lack of standing is incurable, the Complaint must be dismissed without leave to amend. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735, 2025 WL 1085787, at *2 (C.D. Cal. Apr. 4, 2025).

An injury sufficient for Article III must be "concrete and particularized," meaning it is "real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (internal quotation marks omitted)). A "bare procedural violation, divorced from any concrete harm," does not satisfy Article III. *Id.* at 440. In the privacy context, this means that a plaintiff must allege "a concrete harm that bears a close relationship to the substantive right of privacy." *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023). "To survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest."

*Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855, 864 (S.D. Cal. 2023) (internal quotation marks and citation omitted).

Crucially, Plaintiffs' allegations regarding the collection and sharing of their data are framed almost entirely in hypothetical terms, rather than identifying any concrete, individualized harm or specific information that was actually collected from them. The Complaint repeatedly asserts that the tracking technologies "can" or "could" collect certain types of information—such as unique identifiers, device characteristics, or the titles of videos viewed, *see, e.g.*, Compl. ¶¶ 9, 53, 60, 65—but fails to allege with specificity that any such data was, in fact, collected from Plaintiffs themselves or disclosed in a manner that personally identified them. Instead, Plaintiffs rely on generalized descriptions of what tracking tools are capable of, without tying those capabilities to any actual event or injury affecting them. To Plaintiffs' credit, the Complaint does include a screenshot purporting to show a transmission—concededly not involving Plaintiffs themselves—whereby Cybernet is allegedly transmitting information to Google. Compl. ¶¶ 69–70, Fig. 1. However, even this example is presented as an exemplar rather than evidence of any actual transmission of Plaintiffs' own data. Given how common ad and cookie blocker settings are on modern browsers, as well as users' widespread ability to block third-party cookies or routinely clear them, it is pure speculation to assume that any cookies were actually dropped on Plaintiffs' devices or that Plaintiffs could be uniquely identified through such mechanisms when they visited the website.

Plaintiffs' other alleged injuries fare no better. *See* Compl. ¶ 14. Plaintiffs must allege more than vague and conclusory allegations of emotional distress related to unauthorized data disclosures to establish Article III standing. *See Gadomski v. Patelco Credit Union*, No. 2:17-CV-00695-TLN-AC, 2022 WL 223878 at *4 (E.D. Cal. Jan. 25, 2022). Similarly, it is insufficient to allege solely "a speculative risk of future harm." *Papasan v. Dometic Corp*., No. 16-CV-02117-HSG, 2017 WL 4865602, at *6-7 (N.D. Cal. Oct. 27, 2017). Likewise, diminution of value of data only supports Article III standing when the plaintiff "establish[es] both the existence of a market for her personal information and an impairment of her ability to participate in that market." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, No.

13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)). Plaintiffs have made no such showing here. Statutory damages alone do not alleviate the requirement of an Article III concrete injury. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018). And risk of harm is too speculative to confer Article III standing. *See TransUnion*, 594 U.S. at 436, 438 (noting that "the risk of dissemination [of personal information] to third parties" is "too speculative to support Article III standing").

**C. <u>Plaintiffs' remaining allegations fail to state a claim.</u>**

**1. <u>Invasion of privacy (Count I).</u>**

Plaintiff's allegations do not support their claims for violations of the California constitutional right to privacy. "The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Plaintiffs must plead (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) a serious invasion of privacy constituting "an egregious breach of . . . social norms." *Hill*, 7 Cal. 4th at 35-37. The complaint's sparse allegations do not satisfy these elements.[3]

Plaintiffs fail to plead a reasonable expectation of privacy for two reasons. *First,* as discussed above, Cybernet disclosed the collection, and Plaintiffs agreed to it through the Terms of Use when they created their accounts and by continuing use of the website. "[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Hill*, 7 Cal. 4th at 26. Because Plaintiffs used the website after Cybernet's extensive disclosure of its data collection and sharing practices, particularly

---

[3] In the alternative, Plaintiffs bring a claim for common law invasion of privacy on behalf of the New York subclass. "New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law." *In re GEICO Customer Data Breach Litig.*, No. 21-CV-2210,2023 WL 4778646, at *17 (E.D.N.Y. July 21, 2023), *adopted*, 691 F.Supp. 3d 624 (E.D.N.Y. 2023). Count I must also be dismissed to the extent it relies on New York common law.

as it relates to advertising, they cannot now claim that they had a reasonable belief that same collection would not occur. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017) (collecting cases holding that consent bars a privacy claim).

*Second*, any alleged sharing of users' browsing information with third-party advertisers is not "highly offensive." A plaintiff's reasonable expectation of privacy online depends on whether "a user would reasonably expect that [the defendant] would have access to the user's individual data." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 602 (9th Cir. 2020). Webpages visited, buttons and hyperlinks clicked, IP address, and the content interacted with are *necessarily* disclosed to a website provider when using their website. There is no reasonable expectation of privacy in such information. Moreover, as Plaintiffs admit, "Google trackers are present on 74-percent of all web traffic," Compl. ¶ 46, highlighting the ubiquity of such tracking tools across the internet. Where a customer voluntarily provides data for routine commercial uses, there is no reasonable expectation of privacy. *See Sanchez v. Los Angeles Dept. of Transportation*, 39 F.4th 548, 556-57 (9th Cir. 2022) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.") (citation omitted).

**2. Breach of implied contract and unjust enrichment (Counts III & IV).**

Plaintiffs' implied contract and unjust enrichment claims also should be dismissed because an express contract governs the subject. As this Court has explained, "there cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Randall v. Univ. of the Pac.*, No. 5:20-cv-03196, 2022 WL 1720085, at *4 (N.D. Cal. May 28, 2022); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056-57 (N.D. Cal. 2021) (same for unjust enrichment); *see also Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682, 699 (2010) ("[A]n unjust enrichment claim does not lie where the parties have an enforceable express contract."). Because Cybernet's Terms of Use govern Plaintiff's usage of their accounts on Cybernet's website, and Plaintiffs expressly agreed to those Terms as part of the account registration process, Plaintiffs' claims for breach of implied contract and unjust enrichment fail as a matter of law.

### 3. Video Privacy Protection Act (Count V).

The VPPA prohibits a "video tape service provider" from knowingly disclos[ing] … personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). To state a VPPA claim, a plaintiff must allege that: "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc*., 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs do not, and cannot, plausibly allege Defendant disclosed "personally identifiable information" ("PII").

The Ninth Circuit has adopted a narrow interpretation of PII under the VPPA, which is "only that information that would readily permit an **ordinary person** to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 985 (9th Cir. 2017) (citations and quotations omitted, emphasis added). Put differently, information is not PII merely because a sophisticated third party can combine the data, such as unique identifiers, to identify a consumer. *See id.* at 986. ("[A]ccording to Plaintiff, Adobe can identify individuals only because it uses a complex "Visitor Stitching technique" to link an individual's Roku device number with other identifying information derived from "an enormous amount of information" collected "from a variety of sources.").

Here, Plaintiffs assert Cybernet transmits the "identifier number attached to Google's 'cid' and 'sid' cookies, which identify the user's Google account, along with other information that is commonly used to create a browser fingerprint, such as the user's language preference, screen resolution, browser software and version, and operating system software and version." Compl. ¶ 70. Plaintiffs do not, and cannot, plausibly allege that this information would allow an **ordinary person** to identify a specific individual's video-watching behavior. Instead, Plaintiffs' theory is that Google, an "online advertising giant" (Compl. ¶ 7), could potentially link this information to a user's identity via its own internal profiles. *See, e.g.*, Compl. ¶ 9 ("This sensitive information can include a unique identifier that Google uses to identify that user…."). Plaintiffs themselves emphasize that Google is

not an ordinary person, but rather a "behemoth" and "the largest digital advertiser in the country." Compl. ¶ 7, 40. The fact that Google, with its unique resources and information, *might* be able to re-identify users does not satisfy the Ninth Circuit's ordinary person standard.

**4. <u>Electronic Communications Privacy Act (Count VI).</u>**

To survive a motion to dismiss under § 2511(1) of the ECPA, plaintiffs must plausibly allege the defendant intentionally intercepted, used, or disclosed to another person the contents of any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a)-(d). Notwithstanding that Plaintiffs consented, Plaintiffs' ECPA claim fails for two additional reasons. First, Plaintiffs fail to allege that any contents of a communication were intercepted. Second, Cybernet qualifies for the "service provider" exception, which permits a provider of electronic communication services to intercept, disclose, or use communications in the normal course of its business to provide its services or protect its rights or property. *Id.* at § 2511(2)(a)(i).

First, Plaintiffs' claim fails because "the Wiretap Act allows interception where the interception is made by a 'party' to the communication or where a 'party' has consented to the interception." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (citing 18 U.S.C. § 2511(2)(d)). Plaintiffs affirmatively allege that Cybernet consented to the interception at issue when it "chose to accept the devil's bargain offered by Google by installing Google's Tracking Tools on the Website." Compl. ¶ 11. This consent defeats Plaintiffs' claims under the ECPA.

Second, the ECPA protects only the "contents" of a communication, defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Only "a person's intended message to another" is protected; ECPA does not protect mere "record" information such as the name, address, or subscriber number of a customer. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Record information includes URLs, search queries, mouse clicks, IP addresses, unique online identifiers, webpages visited, geolocation, and device settings. *See, e.g.*, *King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-cv-01119, 2025 WL 1635419, at *4 (June 9, 2025); *Yoon*, 549 F. Supp. 3d at 1082-83. Plaintiffs have alleged only that Cybernet intercepted and disclosed record information, not that any specific "contents" of a

communication were allegedly intercepted during their interactions with Cybernet's website, instead pointing to information that Google's Business Tools are *capable* of collecting. Compl. ¶¶ 53, 60, 65; *see, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (finding the plaintiffs' complaint lacked sufficient factual support for an analogous CIPA claim because it only provided hypothetical examples).

Third, the ECPA permits a provider of electronic communication services to intercept, disclose, or use communications in the normal course of its business to provide its services or protect its rights or property. 18 U.S.C. § 2511(2)(a)(i). This Court has rejected a narrow reading of the term "ordinary course of business" that would be limited only to action taken to deliver the communication. *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382, 2013 WL 6248499, at *10 (N.D. Cal. 2013). Congress intended the term "business" to encompass far-ranging activities, including behavioral advertising, which "is a widespread business and is commonplace on the Internet." *Id.* at *11. The allegations in the complaint itself make clear that Cybernet's use of the Business Tools was not an aberration or a surreptitious deviation from its business model, but rather a core, industry-standard component of its ordinary course of business. Plaintiffs allege that Cybernet's "primary business is producing and selling access to the thousands of pornographic videos hosted on the Website," Compl. ¶ 39, and that Cybernet leverages Google's suite of Business Tools to "understand [its] site," "check the performance of [its] marketing," and "[g]et insights only Google can give." Compl. ¶ 41. By Plaintiffs' own admission, these purposes are ordinary to Cybernet's business.

**5. <u>N.Y. Gen. Bus. Law § 349 (Count VII).</u>**

To establish a Section 349 claim, plaintiffs must show: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *See Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 343 (S.D.N.Y. 2023); N.Y. Gen. Bus. Law § 349. Plaintiffs can show neither of the last two elements.

An act or practice is materially misleading if a defendant's statements "[a]re likely to mislead a reasonable consumer acting reasonably under the circumstances." *Uphold HQ Inc.*, 686 F. Supp. at

343-44. Here, Plaintiffs cannot meet that standard because Cybernet provided clear, repeated, and conspicuous notice of its data collection and sharing practices at every stage of account creation and use, including explicit disclosures in its Privacy Policy and Terms of Use that user data may be shared with third parties, including Google, for advertising and analytics purposes. Despite Plaintiffs' own complaint conceding that such practices are standard across the industry (Compl. ¶¶ 6-9, 70), Plaintiffs fail to identify any specific statement or omission by Cybernet that misled them. Nor have Plaintiffs allege a sufficient injury for statutory standing to bring their Section 349 claim. *See City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623 (N.Y. 2009) ("[P]laintiffs must also plead that they have suffered actual injury caused by a materially misleading or deceptive act or practice.") (citations omitted). Plaintiffs suffered no actual injury, much less one tied to any materially misleading or deceptive act or practice.

**6. <u>California Unfair Competition Law (Count IX).</u>**

As with their Section 349 claim, Plaintiffs also lack statutory standing to pursue a claim under the UCL. A UCL plaintiff must establish "loss or deprivation of money or property sufficient to qualify as injury in fact." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (internal quotation marks omitted). To satisfy this requirement, a plaintiff may allege they "(1) surrender[ed] in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) ha[d] a present or future property interest diminished; (3) [were] deprived of money or property to which he or she has a cognizable claim; or (4) [were] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1223-24 (N.D. Cal. 2014). Plaintiffs have suffered no such injury. *See Doe I v. Google, Inc.*, 741 F.Supp.3d 828, 845 (N.D. Cal. 2024) ("[S]imply because a plaintiff's information 'is valuable in the abstract,' and simply because a company 'might have made money from it,' that does not mean that the plaintiff has 'lost money or property as a result.'") (citations omitted) (Chhabria, J.). Plaintiffs have not pleaded they "lost money or property," nor could they. *See In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) ("[A] plaintiff's 'personal information' does not constitute property.").

Finally, Plaintiffs have not plausibly alleged any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code, § 17200. Plaintiffs assert "Defendant violated the 'unlawful' prong of the UCL by [sic] Plaintiffs' and Class Members' right to privacy, as well as by violating the statutory counts alleged herein." Compl. ¶ 202. But Plaintiffs' claim under this prong fails because their predicate claims fail. *Hammerling*, 615 F.Supp.3d at 1094 ("If the predicate claims fail, the UCL claim also fails") (citation omitted). Nor can Plaintiffs claim Cybernet violated the "unfair" prong by deploying a pixel to record videos they watched without their consent. Compl. ¶ 203. Cybernet's Privacy Policy and Terms of Use disclosed the sharing of user information. Where an act or practice is clearly disclosed, it is neither "immoral, unethical, [or] oppressive," nor does its impact on the victim outweigh "the reasons, justifications, and motives" of the defendant. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

#### 7. Negligence (Count II)

In addition to failing to allege damages, Plaintiffs fail to plausibly allege any duty that Cybernet owed to Plaintiffs as required to state a negligence claim. *See* Compl. ¶ 124. As a general matter, "[a] special relationship between the defendant and the victim is one that gives the victim a right to expect protection from the defendant." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021). Common examples of special relationships are those "between parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests." *Id.* Alternatively, a duty can exist pursuant to regulation, such as the Health Insurance Portability and Accountability Act. *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 896-97 (C.D. Cal. 2024). Neither of those types of duties exist here, nor do Plaintiffs allege any other basis under which Cybernet owed a duty to Plaintiffs. On the contrary, Plaintiffs' and Cybernet's duties to each other were governed by the Terms of Use. For that additional reason, Plaintiffs' negligence claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Cybernet respectfully requests that the Court dismiss the Complaint with prejudice, and without leave to amend.

DATED: July 30, 2025

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Sean P. Nalty*
Sean P. Nalty
Benjamin W. Perry (*pro hac vice* pending)

Attorneys for Defendant
Cybernet Entertainment, LLC