Michael Connett (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
Telephone: (772) 783-8436
mconnett@sirillp.com

Mason A. Barney*
Tyler J. Bean*
Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (772) 783-8436
mbarney@sirillp.com
tbean@sirillp.com
ssingh@sirillp.com

*Attorneys for S.H. and C.C., Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **S.H.** and **C.C.** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CYBERNET ENTERTAINMENT LLC d/b/a KINK.COM**.<br><br>Defendants. | Case No. 3:25-cv-04682-VC<br><br>**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE** |

1

**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiffs S.H. and C.C. (collectively, "Plaintiffs"), through counsel and pursuant to the Court's September 4, 2025 Order, respectfully request that the Court: (1) find that Plaintiffs' First Amended Complaint is not substantially identical to their Original Complaint; (2) find that Defendant's Motion to Dismiss has been rendered moot by the filing of Plaintiffs' First Amended Complaint; and (3) issue an Order requiring Defendant to respond to the First Amended Complaint. As explained below, Plaintiffs' First Amended Complaint[1] differs in significant, material regards from their original Complaint.[2] Moreover, these material differences have significant import to Defendant's argument in its Motion to Dismiss.[3]

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Cybernet Entertainment LLC d/b/a Kink.com ("Defendant") is a producer and distributor of fetish pornography. *See* FAC ¶ 4. On its website, www.kink.com (the "Website"), Defendant hosts both premium content, which is only available to its paid subscribers through their Website accounts, and free content, which can be accessed by any internet user without the need for account registration. *Id*.

Plaintiffs filed the Original Complaint on June 3, 2025, alleging statutory and common law claims, including claims under the Video Privacy Protection Act ("VPPA"),[4] arising out of Defendant's surreptitious disclosure of their pornographic

---

[1] ECF No. 23 (the "First Amended Complaint" or "FAC").
[2] ECF No. 1 (the "Original Complaint" or "OC").
[3] ECF No. 17 (the "Motion to Dismiss" or "MTD").
[4] 18 U.S.C. § 2710, *et seq.*

**2**
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

viewing preferences to multinational advertising companies through embedded tracking software present on the Website (the "Tracking Tools"). *See generally*, OC. Defendant subsequently filed a Motion to Dismiss the Original Complaint on July 30, 2025, arguing primarily that all of Plaintiffs' claims must fail as Plaintiffs had consented to the disclosures at-issue. *See* MTD at 11:1-14:8, 16:16-17:3, 17:17-27, 19:13-18, 21:1-11, 22:6-11, 22:22-24. In response, Plaintiffs filed the First Amended Complaint on September 2, 2025, adding four new proposed Classes/Subclasses, allegations regarding Plaintiff C.C.'s status as a non-Website account holder, and allegations describing the insufficiency of any purported consent given by Plaintiffs under VPPA, as explained further in § III(A), *infra*.

On September 4, 2025, this Honorable Court issued an order stating that the First Amended Complaint "appears substantially identical to the original complaint and does not appear to moot any of the issues presented by the motion to dismiss." ECF No. 24. In that Order, the Court directed Plaintiffs to show cause as to why this case should not be dismissed. For the reasons that follow, Plaintiffs respectfully request the Court find that Plaintiffs' First Amended Complaint is not substantially identical to the Original Complaint and should be allowed to proceed.

3
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

## II. LEGAL STANDARD

Generally, an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (internal citation omitted), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896, 927-8 (9th Cir. 2012). As a result, an amended complaint will usually render a previously filed motion to dismiss a preceding complaint as moot. *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). However, where an "amended complaint is substantially identical to the original," a court is not required to treat a pending motion to dismiss as moot, and may instead "rule on the motion to dismiss with reference to the amended complaint." *Baday v. Kings Cty.*, No. 1:20-cv-00644-ADA-SKO, 2022 U.S. Dist. LEXIS 190051, at *3 (E.D. Cal. Oct. 18, 2022).

An amended complaint may be found to be substantially identical to the original where it "suffers from the same deficiencies as the original complaint." *Bisson v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 165084, 2012 WL 5866309, at *1 (W.D. Wash. Nov. 16, 2012). Conversely, where an amended complaint alleges new facts and alternate theories in response to arguments made in a motion to dismiss the original complaint, it is not substantially identical. *See Flying Heliball, LLC v. Zero Zero Robotics, Inc.*, No. 8:24-cv-01838-FWS-JDE, 2024 U.S. Dist. LEXIS 235453, at *6-7 (C.D. Cal. Dec. 6, 2024) ("the FAC is not 'substantially identical' … Rather, the FAC alleges numerous additional facts and an alternative theory of infringement intended to

address the concerns raised by Defendant's Motion to Dismiss"); *Bisson v. Bank of Am., N.A.*, No. C12-0995JLR, 2012 U.S. Dist. LEXIS 165084, at *5 (W.D. Wash. Nov. 16, 2012) (finding amended complaint was not substantially identical when it alleged new facts and theories that responded directly to defendant's motion to dismiss)

## III.  ARGUMENT

### A.  Plaintiffs' First Amended Complaint is not substantially identical to their Original Complaint.

Plaintiffs' First Amended Complaint differs substantially from their Original Complaint.

***First,*** in the Original Complaint, Plaintiffs allege that they both registered for an account on Defendant's pornographic media website. *See* OC ¶¶ 17, 22. After Defendant filed its Motion to Dismiss, Plaintiffs and their Counsel reviewed the Motion's supporting exhibits that demonstrated the process of signing up for a Website account and determined that Plaintiff C.C. never actually created a Website account. Accordingly, Plaintiffs amended their complaint to specify that, while Plaintiff C.C. did view pornographic videos on the Website, she did not register for an account to do so. *Compare* OC ¶ 22, *with* FAC ¶ 22.[5]

---

[5] Plaintiffs note that there is nothing improper about correcting a factual misstatement in a Complaint as new information becomes available through the litigation process. Indeed, the Ninth Circuit has held as follows:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a of limitations,

**5**
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

***Second,*** in the Original Complaint, Plaintiffs defined a single Nationwide Class that they seek to represent, composed of:

> All natural persons who watched a video on the Website, and whose Sensitive Information was disclosed or transmitted to Google or any other unauthorized third party.

OC ¶ 97. Plaintiffs also proposed a New York Subclass defined as the subset of the Nationwide Class residing in New York. *Id.* ¶ 98. In the First Amended Complaint, Plaintiffs instead propose two Nationwide Classes and Subclasses. First, Plaintiffs define a Nationwide Subscriber Class (and derivative New York Subclass) as including:

> All natural persons who registered for an account on the Website, and watched a video on the Website while logged into that account, and whose Sensitive Information was disclosed or transmitted to Google or any other unauthorized third party.

FAC ¶¶ 97-98. Plaintiffs also define a Nationwide Non-Subscriber Class (and derivative New York Subclass) as including:

> All natural persons who watched a video on the Website without registering for an account or logging into the Website, and whose

---

laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative--even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

*PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007).

**6**
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

>Sensitive Information was disclosed or transmitted to Google or any other unauthorized third party.

*Id*. ¶¶ 99-100.

**Third,** in contrast to the Original Complaint, Plaintiffs specifically allege in the First Amended Complaint that any consent that Defendant claims to have received from Plaintiff S.H. and Subscriber Class Members for its use of the Tracking Tools did not comply with the VPPA's explicit requirements for obtaining informed consent because, *inter alia*, such consent was not in a form distinct and separate from any other form setting forth other legal or financial obligations; Defendant did not limit the consent to a time period of less that two years; and Defendant did not provide an opportunity for users to withdraw on a case-by-case basis. FAC ¶ 158; *see also* 18 U.S.C. § 2710(2)(B) (consent requirements under the VPPA).

### B. The substantial differences between Plaintiffs' Original Complaint and First Amended Complaint are material.

In its Motion to Dismiss, Defendant argues that (1) Plaintiffs consented to its Privacy Policy because when Website users sign up for an account, they must affirm that they agree to Defendant's Privacy Policy, and (2) its Privacy Policy fully discloses its use of the Tracking Tools alleged by Plaintiffs. *See* MTD § III(A). The importance of this argument to Defendant's Motion cannot be understated. Indeed, Defendant argues that Plaintiffs' alleged consent to its Privacy Policy is sufficient to foreclose upon every single cause of action brought by Plaintiffs. *See* MTD at 11:1-14:8, 16:16-17:3, 17:17-

7
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

27, 19:13-18, 21:1-11, 22:6-11, 22:22-24. Moreover, with regards to Plaintiffs' implied contract and unjust enrichment claims, Defendant's only argument for dismissal is that Plaintiffs consented to its Privacy Policy. *See* MTD at 17:17-27.

Plaintiffs' new allegations in the First Amended Complaint are material because they rebuff Defendant's consent argument.

***First***, Plaintiffs allege a new Non-Subscriber Nationwide Class (and New York Subclass). FAC ¶¶ 99-100. In its Motion to Dismiss, Defendant argues that Website users consent to its Privacy Policy during the account sign-up process but does not argue that Website users who *do not sign up for an account* ever consent to the Privacy Policy. *See* MTD § 3(A)(1). Consequently, Defendant's consent argument as articulated in its Motion to Dismiss must fail as to the amended allegations pertaining to Plaintiff C.C. and members of the Non-Subscriber Classes who had their data tracked and intercepted without ever signing up for an account.

***Second***, the First Amended Complaint limits its claims under VPPA to a newly defined Subscriber Nationwide Class (and New York Subclass). FAC ¶ 158. Plaintiffs do not concede either that (1) Plaintiff S.H. and members of the Subscriber Classes consented to the Privacy Policy, or (2) the Privacy Policy constitutes adequate disclosure of the Tracking Tools. But, even if the Court were to find both that members of the Subscriber Classes consented to the Privacy Policy and that the Privacy Policy generally discloses Defendant's use of the Tracking Tools (which it should not), Plaintiff S.H.'s

claim under VPPA would still be viable due to the newly added allegations in the First Amended Complaint.

"VPPA imposes more stringent requirements for consent" when compared to other comparable privacy statutes. *Fan v. NBA Props. Inc.*, No. 23-cv-05069-SI, 2024 U.S. Dist. LEXIS 57205, at *5 (N.D. Cal. Mar. 26, 2024) (holding that on a motion to dismiss it could not be determined that the VPPA's requirements were satisfied); *see also* 18 U.S.C. § 2710(2)(B). The FAC adds allegations making clear that Defendant's Privacy Policy fails to satisfy VPPA's stringent requirements. *See* FAC ¶ 158. Under the VPPA, personally identifiable information may only be disclosed with the informed, written consent of the consumer (1) in a form ***distinct and separate from any form*** setting forth other legal or financial obligations of the consumer; (2) that is granted for a period ***not to exceed 2 years***; and (3) where the video tape service provider has provided an opportunity, in a ***clear and conspicuous manner***, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election. 18 U.S.C. § 2710(2)(B). The Privacy Policy cited by Defendant in its Motion to Dismiss does not satisfy these requirements. See *Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 U.S. Dist. LEXIS 237326, at *2 (N.D. Cal. Apr. 5, 2019) (holding that the "distinct and separate" requirement means that there must be a "separate stand-alone consent form" that is "dedicated solely to informing consumers of

9
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

[the defendant's] intent to share their personally identifiable information with Facebook").

These new allegations in the First Amended Complaint fully rebuff Defendant's consent argument by showing that the consent does not satisfy the requirements of the VPPA. Given that consent was Defendant's central argument in their motion to dismiss, the FAC does include new facts and theories directly refuting the arguments made in Defendant's Motion to Dismiss. As such the Court should find that the FAC is ***not*** substantially identical to the Original Complaint. *See Flying Heliball*, 2024 U.S. Dist. LEXIS 235453, at *6-7; *Bisson*, 2012 U.S. Dist. LEXIS 165084, at *5.

    **C.    Even if the Court were to conclude the First Amended Complaint is substantively identical to the Original Complaint, dismissal would not be warranted.[6]**

    1.   <u>Defendant's consent argument is not applicable to the Non-Subscriber Class Members.</u>

As explained in § III(B), *supra*, Defendant's Motion to Dismiss argues that Website users consent to its Privacy Policy during the account sign-up process but does not argue that Website users who *do not sign up for an account* ever consent to the Privacy Policy. *See* MTD § 3(A)(1). Consequently, Defendant's consent argument as articulated in its Motion to Dismiss must fail as to the amended allegations pertaining to

---

[6] For the purposes of the written response, Plaintiffs provide a summary of the arguments they would offer to combat Defendant's Motion to Dismiss. Of course, any Response brief filed by Plaintiffs would provide further detail on these arguments.

Plaintiff C.C. and members of the Non-Subscriber Classes who had their data tracked and intercepted without ever signing up for an account. Where Defendant solely relies on this argument in arguing that a cause of action should be dismissed (as with Plaintiffs' Implied Contract, Negligence and N.Y. G.B.L. § 349 claims), its Motion necessarily fails.

In addition, under the VPPA "a 'reasonable consumer' standard applies" to whether the consent satisfies the statute's requirements. *Fan*, 2024 U.S. Dist. LEXIS 57205 at *8. Numerous courts have found that it is improper to evaluate on a motion to dismiss, without a full record, whether a privacy policy satisfies this standard. *Id.* (holding that whether the terms of the Privacy Policy on the website satisfied the VPPA "is a question that should be resolved on a fuller factual record."); *see also Thornton v. Mindvalley, Inc.*, No. 24-cv-00593-EKL, 2025 LX 170241, at *13 (N.D. Cal. Feb. 14, 2025) ("the VPPA's numerous consent requirements would require the Court to make factual findings regarding how consent was presented to Plaintiffs that are inappropriate at" the motion to dismiss stage).

      2. <u>Plaintiffs have alleged injury sufficient to establish Article III standing.</u>

A privacy injury, like that alleged by Plaintiffs, is sufficient to establish Article III standing. Numerous courts within this Circuit have found the same in other cases involving the same Tracking Tools at-issue here. *See, e.g., Doe v. Tenet Healthcare Corp.*, No. 1:23-cv-01106-DC-CKD, 2025 U.S. Dist. LEXIS 109134, at *32 (E.D. Cal.

June 9, 2025); *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970, at *10 (C.D. Cal. Feb. 1, 2024).

### 3. Plaintiffs allege the disclosure of "highly offensive" information with regards to their pornography viewing habits.

In its Motion to Dismiss, Defendant cites cases generally holding that disclosure of an individual's routine web browsing is not highly offensive. But here, Plaintiffs allege not "routine" web browsing information but rather that Defendant disclosed the specific fetish pornography content that they watched on the Website. Numerous courts within this Circuit have found that such information is highly sensitive, and indeed, this Court agreed in granting Plaintiffs' Motion to Proceed Pseudonymously. See ECF Nos. 2, 8.

### 4. Plaintiffs allege personally identifiable information with regards to their VPPA claims.

Plaintiffs allege that the Tracking Tools present on Defendant's Website conveyed personally identifiable information because it was transmitted alongside a unique cookie identifier tied to their Google accounts. Numerous courts within this Circuit have found that such allegations establish personally identifiable information under the VPPA.[7]

---

[7] *See, e.g., Archer v. NBCUniversal Media, LLC*, No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598, at *10-11 (C.D. Cal. July 2, 2025) (VPPA claim properly plead where plaintiffs alleged disclosure of cookie identifier alongside video titles and URLs that they watched); *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 885 (N.D. Cal. 2025) (same); *Archer v. NBCUniversal Media, LLC*, No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598, at *13-14 (C.D. Cal. July 2, 2025) (same); *Thornton v. Mindvalley, Inc.*, No. 24-cv-00593-EKL, 2025 U.S. Dist. LEXIS 53202, at *11-12 (N.D. Cal. Feb. 14, 2025) (same).

**12**
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

5. <u>Plaintiffs ECPA claim is well-plead.</u>

Defendant argues that Plaintiffs' ECPA claim fails for three reasons: (1) because Defendant was a party to the communications; (2) because the transmissions alleged by Plaintiffs do not constitute "contents" under the meaning of the ECPA; and (3) because Defendant's disclosures constitute its normal course of business. MTD § II(C)(4). None of these arguments are availing.

***First***, Plaintiffs ECPA claim is viable even though Defendant was a party to the communication because Plaintiffs allege the applicability of the ECPA's 'crime-tort' exception. Indeed, courts within this Circuit have uniformly allowed ECPA claims arising out of the use of Tracking Tools to proceed through operation of the crime-tort exception.[8]

***Second***, the information alleged by Plaintiffs is not the record information described in *In re Zynga Privacy Litigation*. Mot. at 35:4-36:24 (citing 750 F. 3d 1098, 1108 (9th Cir. 2014)). Indeed, *Zynga* draws an important distinction: while URLs that merely show the webpages visited by a website user are indeed record information, transmissions that indicate a specific action taken by a website user represent the contents of the user's communications with the website operator. *Zynga*, 750 F. 3d at

---

[8] *See R.S. v. Prime Healthcare Servs.*, No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (crime-tort exception satisfied where defendant intercepted and unlawfully disclosed sensitive information with third parties through Tracking Tools installed on website); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) (same).

**13**
**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

1107-09. Here, Plaintiffs allege that the Tracking Tools on the Website disclosed not only that they visited the Website but also the titles of the specific videos that they watched on the Website. These allegations are sufficient to allege disclosure of the contents of their communications.

***Third,*** behavioral advertising is not Defendant's normal course of business. Tellingly, Defendant only cites one case in support of this argument: *In re Google, Inc. In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, (N.D. Cal. Dec. 3, 2013). Behavioral advertising is certainly Google's business. Plaintiffs admit as much in their Complaint. But unlike Google, Defendant is not a multinational purveyor of targeted advertising services. Its argument fails for that reason alone. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 107918, at *35 (N.D. Cal. Aug. 12, 2016) ("courts have held, consistent with the textual limitation that 'ordinary' imposes on 'course of business,' that not everything that a company may want to do falls within the 'ordinary course of business' exception").

## IV.  CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Honorable Court: (1) find that Plaintiffs' First Amended Complaint is not substantially identical to their Original Complaint; (2) find that Defendant's Motion to Dismiss has been rendered moot by the filing of Plaintiffs' First Amended Complaint; and (3) issue an Order requiring Defendant to respond to the First Amended Complaint.

Dated: September 8, 2025

Respectfully submitted,

/s/ Sonjay Singh
Sonjay C. Singh*
Mason A. Barney**
Tyler J. Bean**
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (772) 783-8436
ssingh@sirillp.com
mbarney@sirillp.com
tbean@sirillp.com

Michael Connett
mconnett@sirillp.com
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
Telephone: (772) 783-8436

*pro hac vice
** pro hac vice anticipated

*Attorneys for Plaintiffs and the Class*

**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**